UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| CORNILEOUS COOPER, SR., | * | |
| Plaintiff, | * | |
| v. | * | Civil Action No. EA-23-575 |
| NPL CONSTRUCTION COMPANY, | * | |
| Defendant. | * | |

**MEMORANDUM OPINION**

Plaintiff Cornileous Cooper, Sr. filed the instant action against Defendant NPL Construction Company (NPL) on March 30, 2022, in the Circuit Court for Baltimore City, Maryland.[1]  ECF No. 4; *see also Cooper* v. *NPL Constr. Co.*, *et al.*, Case No. 24-C-22-001543 (Cir. Ct. for Balt. City).  On March 3, 2023, NPL removed the case to this Court on the basis of diversity jurisdiction.  ECF No. 1.  On March 31, 2024, the undersigned denied NPL's motion for summary judgment without prejudice because Mr. Cooper lacked standing to pursue his claim due to his filing of a Chapter 7 bankruptcy petition.  ECF No. 26.  Mr. Cooper subsequently cured the standing issue.  ECF Nos. 27–28.  Now pending before the Court is NPL's renewed motion for summary judgment, which is fully briefed.  ECF Nos. 29–31.  No hearing is necessary.  Local Rule 105.6 (D. Md. 2023).  For the reasons set forth below, NPL's motion is granted.

**I.      Background**

Mr. Cooper alleges one count of negligence against NPL.  ECF No. 4.  This claim is based on allegations that at approximately 11:00 a.m. on August 19, 2019, Mr. Cooper encountered construction debris in a roadway that caused him to lose control of his motorcycle

---

[1] Mr. Cooper also named the Mayor and City Council of Baltimore City as Defendants but subsequently voluntarily dismissed his claims against them.  ECF Nos. 5, 8.

and resulted in serious injuries. *Id.* at 2–4.[2]  In support of this allegation, Mr. Cooper and his wife, Sheila Cooper, testified at their depositions that on August 19, 2019, they were driving eastbound on Waterview Avenue in Baltimore, Maryland, traveling past Cherry Hill Road toward Potee Street. ECF Nos. 29-5 at 23, 56–60, 71–72[3]; 29-6 at 22–23. Mr. Cooper was on a motorcycle and Mrs. Cooper was about half a car length or ten feet behind him in a passenger car with the Coopers' son. ECF Nos. 29-5 at 11, 21, 23–24, 55, 58–59, 68–69; 29-6 at 24, 42, 44.

Mr. Cooper testified that as he drove around a bend on Waterview Avenue in Baltimore, Maryland, debris in the roadway caused his motorcycle to lose traction and his "front wheel to lock up," resulting in him "flying off" of the motorcycle, hitting two telephone poles, and landing on the sidewalk near the marina. ECF No. 29-5 at 23–27. Mr. Cooper stated that he did not see the debris that he alleged to have been on the road, either before or after the accident, and he did not know how long any debris might have been on the road.[4]  *Id.* at 25–26, 30, 66–67, 81. Mr. Cooper testified that he did not recall if he saw any people working in the roadway and did not see any active roadwork, signs, or construction barrels at the time or location of the accident. *Id.* at 74–75, 85. Mr. Cooper stated that he saw a trench that "had just been covered with blacktop" on the opposite (westbound) side of the road near the intersection of Waterview Avenue and Cherry Hill Road.[5]  *Id.* at 82–87. He further testified that as he was being carried to

---

[2]  Page numbers refer to the pagination of the Court's Case Management/Electronic Case Files (CM/ECF) system printed at the top of the cited document.

[3]  The exhibit containing the transcript of Mr. Cooper's deposition (ECF No. 29-5) does not have the Court's CM/ECF page numbers printed at the top of any pages after page one. Therefore, page number references for citations to this exhibit refer to the transcript pagination.

[4]  Mr. Cooper initially described the debris as "asphalt mixed in with rock mixed in with dirt," but acknowledged later in his deposition that this description was based solely on what his wife had told him and not his own personal knowledge. ECF No. 29-5 at 25, 66–68, 86–88.

[5]  After the accident, Mr. Cooper's wife told him that NPL had been doing construction on the road where the accident had occurred, and they had left the debris in the road. ECF No.

the ambulance after the accident, he saw cones and an "arrow panel" further up the road near the intersection of Waterview Avenue and Potee Street. *Id.* at 40, 74–78.

Mrs. Cooper testified that her husband's motorcycle hit debris on the road and became unstable. ECF No. 29-6 at 49–50, 52. Mr. Cooper unsuccessfully tried to regain control and was thrown off the motorcycle and hit a utility pole. *Id.* at 52–55. Mrs. Cooper described the debris as "blacktop" mixed with dirt and rocks. *Id.* at 58, 60; *see also id.* at 64–67 (further describing the debris). Mrs. Cooper testified that she did not see how debris had gotten into the road, but it spread across the east- and westbound lanes of traffic. *Id.* at 77–78, 80–81; *see also id.* at 143 (confirming that she was not present and has no personal knowledge as to how the debris got into the road). She further stated that there was no active work zone and no closed lanes of traffic on Waterside Avenue between Cherry Hill Road and Potee Street at the time of the accident. *Id.* at 77–79, 124–125.

Mrs. Cooper testified that she believed that NPL was responsible for the debris being in the roadway. *Id.* at 144 ("I'm stating that it was NPL."). In support of this assertion, Mrs. Cooper stated that after the accident she saw an NPL pickup truck and an arrow panel sign surrounded by cones in the far westbound lane approximately 100 yards further east near Potee Street. *Id.* at 75, 95–107. Mrs. Cooper did not see anyone in or near the NPL pickup truck at that time. *Id.* at 108. A few days later, Mrs. Cooper again saw an NPL vehicle near the intersection of Waterside Avenue and Potee Street and spoke with a woman who was wearing an NPL vest about the absence of work signs along the road. *Id.* at 111–112, 126–130, 189–190. The woman said Mrs. Cooper would have to speak with a supervisor about the signs. *Id.* at 130. According to Mrs. Cooper, after she told the woman about her husband's accident, the woman

---

29-5 at 40, 88–89. Mr. Cooper has no personal knowledge as to whether NPL caused any debris to be in the roadway. *Id.* at 90.

told her that NPL does not "do stuff right." *Id.* at 131.  Mrs. Cooper also testified that a motorist who stopped to help at the time of the accident said "they" should have cleaned up the road.  *Id.* at 71, 73.

NPL testified at its deposition that no one at NPL has any personal knowledge regarding Mr. Cooper's accident.  ECF No. 30-6 at 6.  NPL's deposition testimony and answers to interrogatories indicate that the company was performing work as a subcontractor for Baltimore Gas & Electric in August 2019 between 3100 Waterview Avenue and Potee Street.  ECF Nos. 29-4 at 4; 30-8 at 5.  NPL was unable to determine where on Waterview Avenue it was working or who was on the construction team on the date of the accident.  ECF No. 30-6 at 18.  NPL asserted that this "project would have started at one end and moved either west or east."  ECF No. 30-8 at 5.  NPL further asserted that because the date of the incident was approximately halfway through the project, its operations "would have been approximately half way between" the two end points of the project.  *Id.*  A log, maintained and produced by NPL, confirmed that the company was performing work on Waterview Avenue on the day of Mr. Cooper's accident.  ECF No. 30-5 at 2; *see also* ECF No. 29-4 at 4–5.  NPL explained during its deposition that the individuals listed on this log were responsible for lane closures and traffic control.  ECF No. 30-6 at 7, 9.

NPL testified that it "would not have left any construction debris on an open roadway" and further described its ordinary process for ensuring that the roadway was clear.  ECF No. 30-8 at 5; *see also* ECF No. 30-6 at 18.  For example, once "work was completed at a given location, any excavations would be back-filled and [NPL] would place a temporary surface over the backfilled excavation."  ECF No. 30-8 at 5.  Any "residual material would be machine and/or hand swept and cleared."  *Id.*

**II.    Discussion**

NPL argues that summary judgment is appropriate because Mr. Cooper failed to adduce legally sufficient and admissible evidence establishing the required elements of his negligence claim.[6]  ECF No. 29-1.  Mr. Cooper, on the other hand, contends that disputed issues of material fact preclude summary judgment.  ECF No. 30-1 at 3.

**A.    Standard of Review**

Summary judgment motion practice "is properly regarded . . . as an integral part of the Federal Rules as a whole, which are designed 'to secure the just, speedy and inexpensive determination of every action.'"  *Celotex Corp.* v. *Catrett*, 477 U.S. 317, 327 (1986) (quoting Fed. R. Civ. P. 1).  Federal Rule of Civil Procedure 56 provides that the district court "shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  "By its very terms, this standard provides that the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact."  *Anderson* v. *Liberty Lobby, Inc.*, 477 U.S. 242, 247-248 (1986) (emphasis in original).  A material fact is one that "might affect the outcome of the suit under the governing law."  *Id.* at 248.  A dispute about a material fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party."  *Id.*

Thus, to defeat summary judgment, "all that is required is that sufficient evidence supporting the claimed factual dispute be shown to require a jury or judge to resolve the parties'

---

[6] NPL presents alternative arguments as to why it is entitled to summary judgment under theories of premises liability and ordinary negligence.  ECF No. 29-1 at 2, 6–13.  In his opposition to NPL's motion, Mr. Cooper clarifies that his claim against NPL is "grounded in general negligence."  EFC No. 30-1 at 3.  Accordingly, there is no need to address NPL's premises liability arguments.

5

differing versions of the truth at trial." *First Nat. Bank of Ariz.* v. *Cities Serv. Co.*, 391 U.S. 253, 288-289 (1968). On the other hand, summary judgment "is justified if, from the totality of the evidence presented, including pleadings, depositions, answers to interrogatories, and affidavits, the court is satisfied that there is no genuine factual issue for trial and the moving party is entitled to judgment as a matter of law." *Sylvia Dev. Corp.* v. *Calvert C'nty, Md.*, 48 F.3d 810, 817 (4th Cir. 1995).

The Fourth Circuit has cautioned that summary judgment "cannot be granted merely because the court believes that the movant will prevail if the action is tried on the merits." *Jacobs* v. *N.C. Admin. Off. of the Cts.*, 780 F.3d 562, 568-569 (4th Cir. 2015) (quoting 10A CHARLES ALAN WRIGHT & ARTHUR R. MILLER ET AL., FEDERAL PRACTICE AND PROCEDURE § 2728 (3d ed. 1998)). At this stage, "the judge's function is not . . . to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Anderson*, 477 U.S. at 249. In doing so, the district court "must view the evidence in the light most favorable to . . . the nonmovant and draw all reasonable inferences in [its] favor without weighing the evidence or assessing the witnesses' credibility." *Baynard* v. *Malone*, 268 F.3d 228, 234-235 (4th Cir. 2001).

### B. Negligence

In an action brought under a federal court's diversity jurisdiction, the court is to apply the substantive law of the state in which it sits. *Mathis* v. *Terra Renewal Serv. Inc.*, 69 F.4th 236, 242 (4th Cir. 2023); *Lewis* v. *Waletzky*, 422 Md. 647, 657 (2011). In Maryland, "[t]he elements of a cause of action for negligence are (1) a legally cognizable duty on the part of the defendant owing to the plaintiff, (2) a breach of that duty by the defendant, (3) actual injury or loss suffered by the plaintiff, and (4) that such injury or loss resulted from the defendant's breach of the duty." *Green* v. *N. Arundel Hosp. Ass'n, Inc.*, 366 Md. 597, 607 (2001).

6

Under Maryland law, "meager evidence of negligence is sufficient to carry the case to the jury." *Fowler* v. *Smith*, 240 Md. 240, 246 (1965).  Therefore, a negligence claim must be submitted to a jury "if there be any evidence, however slight, *legally sufficient* as tending to prove negligence, and the weight and value of such evidence will be left to the jury." *Id.* (emphasis in original).  As Maryland's high court has explained, and reaffirmed, the words "legally sufficient" mean that the burden of proof on a negligence claim cannot be sustained "by offering a mere scintilla of evidence, amounting to no more than surmise, possibility, or conjecture that such other party has been guilty of negligence." *Shafer* v. *Interstate Auto. Ins. Co.*, 166 Md. App. 358, 376 (2005) (quoting *Brock* v. *Sorrell*, 15 Md. App. 1, 6-7 (1972) (quoting *Fowler*, 240 Md. at 246-247)).  Instead, "evidence must be of legal probative force and evidential value." *Fowler*, 240 Md. at 247.

Moreover, the Fourth Circuit Court of Appeals has instructed that "proof of causation must be such as to suggest 'probability' rather than mere 'possibility,' precisely to guard against raw speculation by the fact-finder." *Sakaria* v. *Trans World Airlines*, 8 F.3d 164, 172-173 (4th Cir. 1993).  Maryland law requires that a plaintiff establish that a defendant's negligence was "both a cause in fact of the injury and a legally cognizable cause." *Young* v. *United States*, 667 F. Supp. 2d 554, 561 (D. Md. 2009) (citing *Pittway Corp.* v. *Collins*, 409 Md. 218, 243 (2009)).  Summary judgment is appropriate on a negligence claim when a plaintiff relies on speculation and possibility to establish causation of the alleged injury.  *E.g.*, *Casey* v. *Geek Squad Subsidiary Best Buy Stores, L.P.*, 823 F. Supp. 2d 334, 352-353 (D. Md. 2011) (rejecting plaintiff's argument that there was an inference that defendant had been negligent because plaintiff experienced an electric shock when using his computer after defendant had repaired it).  While all inferences are drawn in favor of the nonmoving party, any such inferences must be reasonable.  *Johnson* v. *Baltimore Police Dep't*, Civil Action No. ELH-19-0698, 2022 WL

9976525, at *49 (D. Md. Oct. 14, 2022), *aff'd in part, appeal dismissed in part*, No. 22-2095, 2024 WL 1209744 (4th Cir. Mar. 21, 2024); *see also Coleman* v. *United States*, 369 Fed. Appx. 459, 461 (4th Cir.2010) ("The nonmoving party may not rely on beliefs, conjecture, speculation, or conclusory allegations to defeat a motion for summary judgment.").

Like the plaintiff in *Casey*, Mr. Cooper provides only speculation, not evidence, that NPL is at fault for the accident. Taken in the light most favorable to Mr. Cooper, the evidence suggests that some type of debris in the roadway caused the accident. The evidence, however, does not show that NPL directly or proximately caused Mr. Cooper's injuries, and therefore fails to support a claim of negligence. Mr. and Mrs. Cooper both acknowledged that they do not know how the debris came to be in the roadway or how long it had been there. Neither of them saw any active road work at the time of the accident. The only evidence suggesting that NPL was responsible for the debris in the roadway is Mrs. Cooper's testimony that she saw an unoccupied NPL vehicle approximately 100 yards east of the accident site. The remarks of third parties that NPL does not "do stuff right" and that an unidentified party ("they") should have cleaned up the road are insufficient to fill in the evidentiary gaps. The mere fact that NPL was undertaking work on a section of Waterview Avenue cannot carry Mr. Cooper's burden to show that NPL was responsible for the roadway debris. In sum, NPL's responsibility for the debris is "a theory rather than a factual assertion." *Williams* v. *Mayor of Baltimore City*, 245 Md. App. 428, 449 (2020) (affirming summary judgment where plaintiff did not see any water or ice on the roadway, witnesses did not put forth assertions based on their personal knowledge, and no other cars encountered dangerous roadway conditions); *cf. Shafer*, 166 Md. App. at 375-376 (affirming summary judgment where plaintiff whose vehicle's tire had been punctured by a piece of metal in the road presented no evidence that a "phantom tortfeasor" owner or operated a motor vehicle that was the proximate cause of the accident and resulting injuries). "Without evidence of

8

negligence, there [i]s no genuine dispute as to a material fact concerning negligence for the court to submit to the fact-finder." *Shafer*, 166 Md. App. at 375-376.

### III. Conclusion

For the foregoing reasons, NPL's motion for summary judgment (ECF No. 29) is granted. A separate Order follows.


Date: December 2, 2024                                   _____/s/_____
                                                        Erin Aslan
                                                        United States Magistrate Judge